RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-1229

DOUGLAS ALAN BARTON,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00050—Richard A. Enslen, District Judge.

Argued: June 15, 2006

Decided and Filed: August 3, 2006

Before: KENNEDY and COLE, Circuit Judges; VARLAN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Richard D. Stroba, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which VARLAN, D.J., joined. COLE, J. (p. 11), delivered a separate concurring opinion.

---

**OPINION**

---

KENNEDY, Circuit Judge. Douglas Alan Barton ("defendant") appeals his post-*Booker* sentence. In his appeal, he alleges that *Booker* was applied in a manner inconsistent with his due process rights. He also argues that the district court imposed a sentence that was not reasonable. For the following reasons, we affirm defendant's sentence.

---

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

## BACKGROUND

Defendant pled guilty on August 11, 2004, to three counts of bank robbery, in violation of 18 U.S.C. § 2113(a). A Presentence Investigation Report prepared for defendant's sentencing using the 2004 edition of the U.S. SENTENCING GUIDELINES MANUAL ("Guidelines") calculated defendant's combined adjusted offense level as 24 and assigned him a criminal history category of VI. These scores resulted in a recommended sentencing range of between 100 and 125 months' imprisonment. The sentence was imposed on February 8, 2005, after the United States Supreme Court released its opinion in *United States v. Booker*, 543 U.S. 220 (2005).[1]

Prior to his sentencing hearing, the government filed a motion requesting an upward departure from the recommended Guidelines range. The government argued that, in 1999, defendant was convicted of six bank robberies charged in a single indictment, and thus defendant's criminal history score understated the extent of his previous criminal history. It asserted that defendant was a de facto career offender and should be sentenced as a career offender would be under the Guidelines. *Id*. The government pointed out that the Guidelines allowed for upward departures, and *Booker* did not significantly change the analysis governing whether an upward departure was appropriate.

Defendant filed two objections to the presentence report. The district court characterized one objection as "a general objection to the entirety of the [presentence] report and the whole project of sentencing a person using a guideline[s] score." Defendant also specifically objected to the imposition of a "two level enhancement for the making of a threat of death in connection with some of the bank robberies."

The district court overruled both of defendant's objections. The district court relied on pre-*Booker* case law in determining that the phrase "I have a gun" is an implicit threat of death. It then found, by a preponderance of the evidence, that defendant had used an implicit threat of death in connection with the bank robberies, and the two-level enhancement was appropriate. It also rejected defendant's general objection to the use of the Guidelines, holding that to consult the Guidelines, it had to accurately calculate the Guidelines range including enhancements, just as it would have done prior to *Booker*, but that it would then treat the resulting range as an advisory range to be considered in addition to the factors under 18 U.S.C. § 3553(a).

The district court also rejected the government's motion for an upward departure under the Guidelines. It recognized that the Guidelines give judges flexibility to treat certain defendants as de facto career criminals but asserted that "the technical aspects of the guidelines, as part of the lawyer's art, often times serve[] . . . important purpose[s] by making valid legal distinctions which should have or ought to have some effect. In this case, the distinctions count for more than naught." The district court noted that the Guidelines do attempt to account for the fact that, in general, when a defendant goes on a spree, that defendant is less dangerous than a defendant that commits three separate crimes. The six bank robberies included more than one in the same day and were closely related in time. The court ruled that defendant's criminal history was accurately reflected by the Guidelines criminal history score, and an upward departure on that ground was inappropriate in this case.

At sentencing, the government argued for a sentence above the calculated Guidelines range. Counsel for defendant argued that a sentence within the advisory Guidelines would be appropriate and asked the court to consider defendant's mental health and substance abuse problems in

---

[1]Defendant's sentencing was delayed several times in anticipation of the United States Supreme Court ruling in *Booker*. In addition, defendant's sentencing was delayed at one point because his counsel did not appear at a hearing.

determining an appropriate sentence.  Defendant also requested being assigned to a facility where he could get appropriate psychiatric counseling.

When sentencing the defendant, the court listed the factors that it was required to consult under 18 U.S.C. § 3553(a).  The district court noted that defendant had robbed nine banks but that his history suggested "defendant has had profound difficulties adjusting to societal legal expectations caused in no small measure by his mental health problems."  It also described the level of threats used in the bank robberies as mild compared to other armed robbery crimes  but expressed that it did not believe "that anybody['s statement to]  a bank teller...I have a gun I want money can be considered a mild threat."  By way of comparison, the court considered a previous bank robbery where, although the perpetrator had not intended to harm the teller, the robber had used a gun, mistakenly fired it, killing the teller, and subsequently received a life sentence. It noted that defendant's crimes were committed as a spree but that, in the court's estimate, defendant was a dangerous person.  The district court also focused on the need to rehabilitate defendant and get him the psychiatric and substance abuse treatment that he needed, but it also indicated that selecting an appropriate amount of time to achieve all of those aims was difficult.  The district court sentenced defendant to 168 months, three years of supervised release, a $300 special assessment, and restitution to the financial institutions.  Additionally, in light of defendant's history of severe depression and substance abuse, the court expressed its intention to strongly recommend that defendant be incarcerated at Butner Federal Correctional Institution, per defendant's request, or at another medical prison facility that could help him with both of those issues.

On appeal, defendant continues to press his objections to the use of enhancements in determining the advisory Guidelines range.  For the first time on appeal, defendant also argues that the Due Process Clause prohibits "retroactive application of the detrimental aspects of the *Booker* decision," because the judicial construction in *Booker* was "unexpected" and "indefensible by reference to law which had been expressed prior to the conduct in issue." *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001).  Defendant also argues that "[t]he Due Process clause [of the Fifth Amendment] requires that facts which increase the advisory Guideline[s] range be found beyond a reasonable doubt."  Finally, defendant argues that his sentence is not reasonable because it is greater than necessary to comply with the sentencing factors under 18 U.S.C. § 3553(a).  Defendant asserts that the district court held that he was not a de facto career offender under the Guidelines but then sentenced him as if he was one.  He argues that this result also makes his sentence unreasonable.

## ANALYSIS

A.     Retroactive application of *Booker* in a fashion that negatively impacts defendant does not violate the Due Process Clause of the United States Constitution.

Defendant pled guilty after the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004).  He was sentenced after the Supreme Court decided *Booker*.  For the first time on appeal, defendant argues that because he pled guilty after *Blakely* and prior to *Booker,* the Due Process Clause prohibits "retroactive application of the detrimental aspects of the *Booker* decision," asserting that the judicial construction in *Booker* was "unexpected" and "indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 457.  This court reviews constitutional challenges de novo, *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003), however, because this argument was not raised below, Sixth Circuit precedent requires application of the plain error standard. *See id*. *See also United States v. Hayes*, 218 F.3d 615, 619-20, 622 (6th Cir. 2000).  Since we conclude that no due process violation occurred, and, thus, there was no error, any ambiguity in the appropriate standard of review need not be resolved.

Defendant relies primarily on *Rogers* to support his arguments.  In *Rogers*, the Supreme Court addressed whether the Ex Post Facto Clause of the United States Constitution as applied to

judicial decisions through the Due Process Clause prohibited the retroactive application of the Tennessee Supreme Court's decision to abolish the common law "year and a day rule" in prosecutions for homicide. *See Rogers*, 532 U.S. at 453, 456-57 (citing and discussing *Bouie v. City of Columbia*, 378 U.S. 347 (1964)[2]). The *Rogers* Court held that "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id*. at 462 (quoting *Bouie*, 378 U.S. at 354).[3] It determined that the Tennessee Supreme Court's change to the law was not unexpected because the year and a day rule was "widely viewed as an outdated relic of the common law" and that the defendant in that case did not provide any good reason to retain the rule. *Id*. at 462-63. The Court discussed the common law and legislative abolition of the rule in other states and described the paucity of case law using the rule in Tennessee as further reasons that retroactive abolition of the rule was neither unexpected nor indefensible. *Id*. at 463-67.

Defendant's arguments that the Supreme Court's substitution of discretionary Guidelines for mandatory Guidelines was both "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue" cannot, in his case, be correct. *Id*. at 470. While it is true that precisely what effect *Blakely* would have on the Guidelines was not known, *Blakely* was decided before defendant committed the robberies here. Thus, it would not have been a leap of logic to expect the Supreme Court to apply *Blakely* to the Guidelines in some manner. Furthermore, while

---

[2]In *Bouie v. City of Columbia*, the United States Supreme Court addressed the question of whether the Supreme Court of South Carolina's post-arrest construction of its criminal trespass statute violated the Due Process Clause of the United States Constitution. 378 U.S. 347 (1964). The United States Supreme Court found that:

> There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language. As the Court recognized in *Pierce v. United States*, 314 U.S. 306, 311, 62 S.Ct. 237, 239, "judicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness." Even where vague statutes are concerned, it has been pointed out that the vice in such an enactment cannot "be cured in a given case by a construction in that very case placing valid limits on the statute," for "the objection of vagueness is two-fold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss...." If this view is valid in the case of a judicial construction which adds a 'clarifying gloss' to a vague statute, making it narrower or more definite than its language indicates, it must be a fortiori so where the construction unexpectedly broadens a statute which on its face had been definite and precise. Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids.

*Bouie*, 378 U.S. at 352-53 (citations omitted). The Supreme Court, using the above analysis, determined that:

> An ex post facto law has been defined by this Court as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action," or "that aggravates a crime, or makes it greater than it was, when committed." If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*Id*. at 353-54. As a result, the Court held that the defendants' convictions for criminal trespass had to be reversed because they violated the Due Process Clause. *Id*. at 362-63.

[3]The *Rogers* Court explained its rationale for the use of a more stringent standard in the due process context by noting that: "[s]trict application of *ex post facto* principles in that context would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system. The common law, in short, presupposes a measure of evolution that is incompatible with stringent application of *ex post facto* principles." *Id*. at 461.

many differed over the mechanism by which the Supreme Court would remedy any problem with the Guidelines, defendant offers no argument as to why the remedy selected by the Supreme Court was unexpected.

Defendant also argues that the remedial holding in *Booker* was "indefensible by reference to the law which had been expressed prior to the conduct at issue" because the Supreme Court failed to cite cases in support of its remedy. We disagree. Demonstrating a failure by a court to cite case law in support of its crafted remedy is a far cry from showing that its remedy was indefensible under prior expressed precedent.

The instant case differs from both *Bouie* and *Rogers* in important respects. In both of those cases, the Supreme Court was concerned with the retroactive application of a binding judicial interpretation. In other words, the interpretation of the statute and the common law rule compelled a result that had a negative retroactive effect on the defendants advancing the due process claims. In contrast, the Supreme Court decision in *Booker* made the Guidelines advisory. Because the Guidelines are advisory post-*Booker*, they can be described as providing recommended sentences for district court judges. It is difficult to see how those recommendations can raise the same constitutional infirmities as can the binding judicial interpretations at issue in *Bouie* and *Rogers*. While it is true that, under *Booker*, district courts must consult the Guidelines, after they are consulted, the district court may impose a sentence outside the Guidelines range if the other relevant factors under 18 U.S.C. § 3553(a) direct the selection of a different sentence. *See Booker*, 543 U.S. at 264-65. Indeed, post-*Booker*, while the district court is required to consult the Guidelines, the critical inquiry in determining an appropriate sentence is not the Guidelines range, but a sentence that is "sufficient, but not greater than necessary to comply with the purposes set forth in [Title 18 U.S.C. § 3553(a)]. *Id.* at 268. *See United States v. Webb*, 403 F.3d 373, 383-85 (6th Cir. 2004). *See also United States v. Richardson*, 437 F.3d 550, 553-55 (6th Cir. 2006). Put another way, if, in calculating the Guidelines sentence, the district court enhances a defendant's sentence, that enhancement provides no guarantee that that calculated Guidelines range will have a critical effect on defendant's sentence in view of the fact that the Guidelines are now advisory. Absent such a guarantee, it is difficult to see how the protection against ex post facto laws that a defendant's right to due process provides could be violated. Even before *Booker*, the district court had some freedom to depart from Guidelines ranges. Finally, the freedom to depart upward is not unfettered post-*Booker* in view of this court's reasonableness review.

Additional support for our conclusion that defendant's due process rights were not violated comes from the reason why providing notice is important. In *Rogers*, the Supeme Court noted that "*Bouie* was rooted firmly in well established notions of *due process.* Its rationale rested on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Rogers*, 532 U.S. at 459. Thus, when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount. *Id.* Courts are concerned about notice, forseeability, and fair warning because it is expected that both statutes and judicial interpretations of those statutes affect the behavior of the public. Thus, the public must be able to adequately inform itself of a law or a judicial interpretation before acting. *Cf. United States v. Harriss*, 347 U.S. 612, 617 (1954) ("The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."). If, however, the change in question would not have had an effect on anyone's behavior, notice concerns are minimized.[4]

---

[4]Our prior precedent and the Guidelines themselves cautioned that earlier versions of the Guidelines should be used when an ex post facto problem is present. *See United States v. Kussmaul*, 987 F.2d 345, 351-52 (6th Cir. 1993); U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1). Such a concern is understandable. In the past, when the Guidelines were mandatory, the Guidelines operated in a manner similar to statutes. Thus, ex post facto concerns, as

Defendant does not argue that he was ignorant of the law under which he was convicted, nor does he argue that the law is vague or otherwise failed to put him on notice as to either the prohibited conduct or the possible penalty[5] he faced. In this case, defendant was fully aware that robbing a bank was illegal and that doing so would expose him to a significant penalty that might increase because of his prior federal convictions for committing the same crime.

Prior to *Booker* and under the mandatory Guidelines regime, defendant would likely have faced between 100 and 125 months' imprisonment for his crime. After *Booker*, under the advisory Guidelines, defendant may be sentenced up to the statutory maximum if such a sentence would comply with 18 U.S.C. § 3553(a). Further, prior to *Booker*, upward departures could be granted for a multitude of conduct, so defendant's possible sentence exposure did not increase.

Defendant was sentenced to 168 months' imprisonment. For this court to find that notice is a significant concern in this situation, it would have to find that a defendant would likely have changed his or her conduct because of a possible increase in jail time. While it is true that, at the margins, notice considerations might limit the increase in length of sentences,[6] it is difficult to see why a person who was intent on committing a bank robbery and who was presumably prepared to spend a lengthy period of time in prison if he or she was caught would be dissuaded by the prospect of a somewhat longer prison term. Notice concerns are, therefore, limited in this case.

While all the other circuits agree that the application of advisory Guidelines to defendants who committed crimes prior to *Booker* does not violate the Due Process Clause in the manner

---

opposed to the ex post facto-type due process concerns at issue here, were present because a defendant would be guaranteed to receive a higher sentence under the mandatory Guidelines if changes in the Guidelines calculations increased that defendant's offense level or criminal history score.

Ex post facto concerns require a slightly different analysis than do similar due process concerns, first because ex post facto legislation is explicitly banned in the Constitution, but also because when the Supreme Court has discussed the motivation behind the ban on ex post facto legislation, it has identified a separate concern than notice as motivating its jurisprudence, that is, the need to restrict arbitrary or vindictive legislative acts. *See Weaver v. Graham*, 450 U.S. 24, 29 (1981) ("The ban [on ex post facto legislation] also restricts governmental power by restraining arbitrary and potentially vindictive legislation."(citations omitted)). These twin concerns of notice and the desire to restrict arbitrary and vindictive acts by a legislature cause courts to apply the Ex Post Facto Clause in a more stringent fashion than they do the ex post facto aspect of the Due Process Clause.

When the Guidelines were mandatory, defendants faced the very real prospect of enhanced sentences caused by changes in the Guidelines or changes in the interpretation of Guidelines that occurred after they had committed their crimes. Now that the Guidelines are advisory, the Guidelines calculation provides no such guarantee of an increased sentence, which means that the Guidelines are no longer akin to statutes in their authoritativeness. As such, the Ex Post Facto Clause itself is not implicated. Thus, the dual concerns of notice and the need to prevent arbitrary or vindictive legislative acts present in our earlier cases are no longer present in the same way they were when we analyzed changes to the Guidelines under the Ex Post Facto Clause. Our concern, under Supreme Court due process jurisprudence, and in contrast with its ex post facto jurisprudence, is mainly limited to insuring that defendants have sufficient notice of illegal activity. *Cf. Harriss*, 347 U.S. at 617. As such, because due process analysis requires a different focus than does ex post facto analysis and because notice concerns are, in this case, minimized, *see infra*, defendant's due process arguments fail.

[5]The statutory maximum for defendant's crimes is 20 years in prison, a fine, or both. 18 U.S.C. § 2113(a).

[6]For instance, if a prior version of the Guidelines in effect at the time the crime is committed suggests a sentence of a fine and a later version recommends a period of imprisonment, such a difference might implicate the Due Process Clause.

suggested by defendant, we are unable to simply adopt their analyses.**7**  Those courts focus on one of two arguments as to why retroactive application of *Booker* does not violate the Due Process Clause.  Some circuits hold that because defendants were on notice as to the statutory maximums, that notice is sufficient to comport with the Due Process Clause. *United States v. Pennavaria*, 445 F.3d 720, 723-24 (3d Cir. 2006); *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006); *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); *United States v. Dupas*, 419 F.3d 916, 921 (9th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005). *See also United States v. Austin*, 432 F.3d 598, 599-600 (5th Cir. 2005). *Cf. United States v. Lata*, 415 F.3d 107, 110-12 (1st Cir.) (holding that statutory maximums provided enough guidance such that a defendant would not be surprised as is required by *Rogers*); *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005) (holding that statutory maximums provided sufficient guidance such that a defendant cannot claim that the application of *Booker* would violate the Supreme Court's test in *Rogers*).  Were we to hold that statutory maximums are sufficient to cure any notice issue under the Due Process Clause, the same logic would have applied with equal force to changes in the Guidelines prior to *Booker*.  Yet, this court's precedent held to the contrary, and the Guidelines themselves cautioned about violations of the Ex Post Facto Clause. *See United States v. Kussmaul*, 987 F.2d at 351-52; U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1). *See also supra* note 4.

Other circuits have also held that the Supreme Court's direction that *Booker* should apply to all cases on review means that no due process issue exists, as the Supreme Court would not have ordered the lower courts to engage in unconstitutional conduct. *Pennavaria*, 445 F.3d at 723-24; *United States v. Wade*, 435 F.3d 829, 832 (8th Cir. 2006); *Austin*, 432 F.3d at 599-600; *Vaughn*, 430 F.3d at 524-25; *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2005); *Jamison*, 416 F.3d at 539; *Duncan*, 400 F.3d at 1304.  This argument is also fraught with difficulties and uncertainties. Due process concerns of the type raised here were not on appeal in *Booker*.  Thus, the Supreme Court may not have considered the due process implications of its holding.  If the Supreme Court did not consider ex post facto-type due process violations resulting from its decision in its directive to apply *Booker* to all cases on review, its decision can not be read as necessarily foreclosing arguments such as those advanced by defendant here.

The First Circuit's holding in *Lata* and the Eleventh Circuit's holding in *Duncan* are worthy of further discussion.  In the former case, the First Circuit determined that:

> [S]omeone in Lata's position could not reasonably be surprised by the sentence he eventually received.  Whether or not exactly the same sentence would necessarily have been imposed by departures under the guidelines is necessarily uncertain.  But the sentence imposed is not wildly different than a sentence that might well have

---

**7**Certain of our post-*Booker* cases have identified ex post facto or due process concerns as being ever-present, but those cases simply restate the prior pre-*Booker* rule and do not address the question of how *Booker* affects the ex post facto and due process analyses under *Rogers* and *Bouie* in any detail. *United States v. Harmon*, 409 F.3d 701, 706 (6th Cir. 2005) ("When use of that edition would violate the ex post facto clause of the Constitution, however ( i.e., when it would produce a higher sentence range than the version in effect when the crime was committed), the earlier edition is to be used." (citing U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b))); *United States v. Davis*, 397 F.3d 340, 348-50 (6th Cir. 2005) (finding an ex post facto problem and finding that said problem meets the plain error test). Both of these cases addressed sentences that the district court gave under the mandatory Guidelines prior to the Supreme Court's decision in *Booker*.  As such, though this court's decisions in both cases were released after *Booker*, this court was reviewing the district courts' errors in the posture of a court reviewing sentences given under the mandatory Guidelines.  In addition, the limited analysis of the question and the citation to pre-*Booker* precedent in both of these cases indicate that the ex post facto-type due process arguments raised by both defendants were the same type of errors raised by other defendants when the Guidelines were mandatory.  In short, they were not the same type of due process argument raised by defendant here today.  As such, because these cases addressed different types of due process concerns than the ones defendant raises here, their precedent is not binding on this issue.

been imposed under the guidelines for someone with Lata's criminal record and offense-related conduct.

*Lata*, 415 F.3d at 112. *See also Duncan*, 400 F.3d at 1307. In so holding, the First and the Eleventh Circuits melded the argument on statutory maximums raised by other circuits with the tests for due process violations laid out by the Supreme Court in *Rogers*. Such an approach is more convincing but could still be applied to the Guidelines prior to *Booker*, thus raising the conflict with our precedent.

The First Circuit also discussed the possibility that "a sentence...imposed for a pre-*Booker* crime that is higher than any that might realistically have been imagined at the time of the crime or based on factors previously discouraged, prohibited, or not recognized under the guidelines" might raise due process concerns. *See Lata*, 415 F.3d at 112. The court also noted that reasonableness review may well catch any such sentences that are truly out of the norm. *Id.* Though the problem that the First Circuit identifies is, as it concluded, unlikely to occur, its caveat is a reasonable one. Thus, while we join every other circuit in holding that *Booker* does not violate ex post facto-type due process rights of defendants, we come to that conclusion for the reasons stated herein. Defendant's ex post facto and due process arguments lack merit.

B.       The district court properly used the preponderance of the evidence standard for calculating enhancements using the advisory Guidelines.

Defendant argues that the district court should have only applied enhancements if the government proved those enhancements beyond a reasonable doubt, rather than merely by a preponderance of the evidence. Prior to *Booker*, district courts used the preponderance of the evidence standard when applying enhancements. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003) ("The burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies."). After *Booker*, this court has held that:

> *Booker* did not eliminate judicial fact-finding. Instead, the remedial majority gave district courts the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range. *Booker*, 125 S.Ct. at 764, 769; *U.S. v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005). District courts, in cases such as these, must, therefore, calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range.

*United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005). *See also United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005) (noting that "a finding under the Guidelines must be based on reliable information and a preponderance of the evidence").

The Supreme Court held that the remedy it chose in making the Guidelines advisory is all that is constitutionally necessary to avoid the Fifth Amendment due process problem that defendant alleges exists. *See Booker*, 543 U.S. at 258-65. If the Supreme Court had felt it necessary to remedy the constitutional error in the Guidelines in the manner defendant suggests, it clearly could have done so. *See id.* at 272-303 (Stevens, J., dissenting in part); *id.* at 303-313 (Scalia, J., dissenting in part); *id.* at 313-326 (Thomas, J., dissenting in part). It did not. Instead, the Court decided to leave the Guidelines intact, but to allow district courts the option of sentencing outside the Guidelines when circumstances, including the § 3553(a) factors, warranted. *See id.* at 258-65. Defendant's argument on this point fails.

C.       Defendant's sentence is reasonable.

In assessing a sentence's reasonableness, this court has focused on the district court's obligation to consider the factors listed in 18 U.S.C. § 3553(a)**[8]** in arriving at an appropriate sentence.  *See Webb*, 403 F.3d at 383-85; *Williams*, 436 F.3d at 708.  These tests have been described as the procedural requirements of reasonableness review. *See United States v. Buchanan*, 449 F.3d 731, 735-741 (6th Cir. 2006) (Sutton, J., concurring).  A district court "need not recite these [§ 3553(a)] factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby,* 418 F.3d 621, 626 (6th Cir.2005). *Cf. United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) ("*Williams* does not mean that a Guidelines sentence will be found reasonable in the absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors.").  This court does not require "explicit reference to the § 3553(a) factors in the imposition of identical alternative sentences." *United States v. Till*, 434 F.3d 880, 887 (6th Cir. 2006).

In this case, the district court specifically read through the factors under 18 U.S.C. § 3553(a), discussed those factors, and considered all of the factors that were relevant.  Defendant argues that his sentence is unreasonable because it is longer than necessary to achieve the district court's aim of deterrence in light of the fact that defendant suffered from serious mental health problems and because defendant claims his crimes were comparatively mild.   The district court considered defendant's mental health history in pronouncing the sentence.  While the court recognized that defendant's mental health problems contributed to his crimes, the district court determined that defendant's mental health needs were better served by a longer sentence served in a facility where he could receive adequate treatment.  Indeed, in defendant's own statement he indicated that, in his view, he was released too early from his previous sentence of incarceration.  While it is true that the district court described defendant's threats as "comparatively mild," it qualified that statement when it expressed doubt "that anybody that's a bank teller and has a person say I have a gun I want money" would have considered such a threat to be "mild."   Defendant's claims that his mental health history and the comparatively mild nature of his offense call for a lower sentence in this case are unfounded.

---

**[8]**18 U.S.C. § 3553(a) reads as follows:

**Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant;  and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>> . . .
> **(5)** any pertinent policy statement--
> . . .
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;  and
> **(7)** the need to provide restitution to any victims of the offense.

Defendant also relies on the fact that the district court declined to upwardly depart from the Guidelines at the government's request but then sentenced him above the advisory Guidelines range it calculated. Defendant argues that such a turn of events is contradictory, or, at the very least, unreasonable. The district court denied the government's motion for upward departure because it believed that defendant's criminal history was adequately taken into account by the Guidelines calculation. In its motion, the government's sole reason for requesting an upward departure was that defendant's criminal history score did not adequately take into account his criminal history. The district court disagreed with the government's criminal history arguments.

In sentencing defendant above the recommended Guidelines range, the district court cited as its reasons that defendant was a "dangerous person" and that he "needs to be removed from society." The focus on the defendant's level of danger to society indicates that deterrence was an important consideration to the court in this case. It was not inconsistent for the district court to deny the government's request to upwardly depart from the Guidelines but then sentence defendant above the Guidelines range, because the requested upward departure and the reason for sentencing defendant above the Guidelines were based on different rationales. The need for deterrence supported a sentence above the recommended Guidelines range, even though his criminal history score adequately represented his criminal history. We find defendant's sentence reasonable.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

———————————

**CONCURRENCE**

———————————

R. GUY COLE, JR., concurring. I agree with the majority's conclusions on each of the three issues before this court: Retroactive application of *Booker* does not violate the defendant's due process rights, the sentencing enhancement applied by the district court was supported by a preponderance of evidence, and the defendant's sentence was reasonable. I write to add an alternative analysis on the first of these issues.

The majority finds no due process concerns of an ex post facto variety in part because *Booker* provides no guarantee that the Guideline range calculated by a sentencing court will have a critical effect on a defendant's sentence, given that the court is free to impose a sentence outside of the range. As I understand the defendant's argument, however, a due process concern exists precisely because there is no longer a guarantee that he will receive a sentence within the appropriate Guideline range.

Nevertheless, I agree that the law provided the defendant sufficiently fair warning to satisfy the Due Process Clause as interpreted by the Supreme Court in *Rogers v. Tennessee*, 532 U.S. 451 (2001). Like the majority, I prefer to rest this conclusion on more than the mere fact that the defendant had fair warning of the statutory maximum for his crime. At the time the defendant committed the conduct in question, he had notice not only of the elements of the crime, and of the seriousness with which the crime was viewed as reflected by the statutory maximum, but also of the factors that would aggravate or mitigate the severity of the offense. The district court sentenced the defendant under the same Guidelines that were in effect before *Booker* and weighed the same factors. The defendant was therefore on notice not only that the law attached consequences to bank robbery, but also that the law attached additional consequences to, in this case, making a threat of death while performing that bank robbery, or committing that bank robbery after having committed other offenses. In my mind, the fact that the defendant had notice of these factors is more compelling than the fact that he had notice of the statutory maximum for his offense, since *Rogers* instructs us that one of our primary concerns should be with "attaching criminal penalties to what previously had been innocent conduct." *See Rogers*, 532 U.S. at 459. I see no explicit conflict, however, between our Ex Post Facto Clause precedent such as *United States v. Kussmaul*, 987 F.2d 345, 351-52 (6th Cir. 1993), and our sister circuits' resolution of the *Booker* retroactivity issue under the Due Process Clause, since, as the majority points out, the Supreme Court has set forth different analyses for these two spheres of jurisprudence.

Finally, despite the Supreme Court's instruction to analyze judicial decision-making under the Due Process Clause differently from legislation under the Ex Post Facto Clause, I am not fully convinced that the concerns about "arbitrary and potentially vindictive legislation," *see Weaver v. Graham*, 450 U.S. 24, 29 (1981), that inform Ex Post Facto Clause jurisprudence are completely absent in this unique context, where a court sentencing a defendant after *Booker* has the opportunity to affect directly and concretely the punishment that will attach to the defendant's conduct. I believe these concerns are answered, however, by the important role of this court's reasonableness review, which ensures that a sentencing court will not exercise its new discretion in an arbitrary or vindictive manner.

With these qualifications, I concur in the majority opinion.