*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEVEN ADERRICK ODOM,

Defendant-Appellant.

FOR PUBLICATION
March 12, 2019
9:15 a.m.

No. 339027
Washtenaw Circuit Court
LC No. 10-000618-FC

Before: METER, P.J., and SERVITTO and REDFORD, JJ.

METER, P.J.

Defendant appeals as of right the trial court's out-of-guidelines sentence, entered after our Supreme Court ordered a remand consistent with part VI of its opinion in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *People v Odom*, 498 Mich 901; 870 NW2d 575 (2015). In pertinent part, defendant argues that the prohibition against *ex post facto* laws—embodied in Article 1, § 10 of both the federal and state constitutions—prohibited the trial court from imposing a lengthier sentence on remand than it did during the original sentencing. We conclude that *Lockridge*'s shift from a mandatory sentencing regime to an advisory one was not the type of unforeseeable legal change which offends the *ex post facto* clauses. Accordingly, we hold that those clauses present no obstacle to the retroactive application of *Lockridge*, even when its application results in an increased sentence. Finding no merit to any of defendant's other assertions of error, we affirm the trial court's out-of-guidelines sentence.

## I. BACKGROUND

In March 2011, a jury found defendant guilty of armed robbery, MCL 750.529, and bank robbery, MCL 750.531, after defendant stole nearly $3,000 from a Check 'n Go payday lender. The trial court originally sentenced defendant to 210 to 420 months of imprisonment for the armed-robbery conviction and 86 to 420 months of imprisonment for the bank-robbery conviction. Defendant appealed his convictions and, in a pre-*Lockridge* opinion, this Court affirmed defendant's convictions and sentences. See *People v Odom*, unpublished per curiam opinion of the Court of Appeals, issued January 7, 2014 (Docket No. 304699). Then, applying its recently issued opinion in *Lockridge*, our Supreme Court affirmed defendant's convictions,

but concluded that defendant was entitled to resentencing because the trial court engaged in judicial fact finding when scoring defendant's then-mandatory sentencing guidelines. *Odom*, 498 Mich 901. Accordingly, our Supreme Court ordered a *Crosby*[1] remand to cure the constitutional error. *Id*.

On remand, defendant elected to be resentenced. The trial court found that it would have imposed a materially different sentence had its sentencing discretion not been constrained by the mandatory sentencing guidelines and ordered resentencing. In its order for resentencing, the trial court expressed its belief that defendant's original sentence was not proportionate to the seriousness of his conduct and that an out-of-guidelines sentence was likely warranted. Defendant then moved for a new attorney and to withdraw his request for resentencing. The trial court denied the motion to withdraw the resentencing request, but granted the motion for new counsel. Eventually, the matter proceeded to a resentencing hearing. After receiving updated sentencing information, the trial court sentenced defendant to 360 to 720 months of imprisonment for each of his convictions and ordered him to pay restitution to the bank. The trial court opined that defendant's recidivism and the brazenness of his most-recent offenses justified the upward departure from the sentencing-guidelines range.

Defendant again appealed his sentence, alleging in part that his first defense attorney on remand was ineffective for failing to inform him of the possibility of an increased sentence at resentencing. To explore this issue further, we remanded this case for an evidentiary hearing. See *People v Odom*, unpublished order of the Court of Appeals, entered September 27, 2017 (Docket No. 339027). Following a *Ginther*[2] hearing, the trial court concluded that defendant was not unconstitutionally deprived of the effective assistance of counsel. The trial court found that defense counsel may have failed to timely communicate with defendant, but that any error did not affect the outcome of defendant's resentencing. The trial court emphasized defendant's intent to seek resentencing; thus, defense counsel's ultimate motion for resentencing and the trial court's new sentence granted defendant the relief he sought. This appeal followed.

## II. ANALYSIS

Defendant raises several challenges to the trial court's out-of-guidelines sentence. Broadly, we may group defendant's issues into two categories: those which address the general limits of the trial court's authority on remand and those that address the trial court's exercise of its sentencing discretion. We review *de novo* questions of law, including the interpretation of statutory and constitutional provisions. *People v Callon*, 256 Mich App 312, 315; 662 NW2d 501 (2003). The trial court's discretionary decisions—including its exercise of sentencing discretion—are reviewed for an abuse of discretion. See *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008); *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Yost*, 278 Mich App at 353. We review the trial court's

---

[1] *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005).

[2] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

factual findings for clear error. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*.

## A. THE TRIAL COURT'S AUTHORITY ON REMAND

In *Alleyne v United States*, 570 US 99, 116; 133 S Ct 2151, 2162; 186 L Ed 2d 314 (2013), the United States Supreme Court determined that, in mandatory sentencing schemes, a criminal defendant's Sixth Amendment rights are violated when he is sentenced on the basis of facts that are not found by a jury beyond a reasonable doubt. Acknowledging that *Alleyne* directly implicated our own sentencing regime, in *Lockridge*, 498 Mich at 391, our Supreme Court severed Michigan's sentencing guidelines, MCL 777.1 *et seq*, to the extent that they were mandatory and "[struck] down the requirement of a substantial and compelling reason to depart from the guidelines range." (Internal citation and quotation marks omitted). Our Supreme Court held that, moving forward:

> all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. [*Id. at* 395.]

For cases decided before *Lockridge* that require resentencing, our Supreme Court adopted the procedure set forth in *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005). *Lockridge*, 498 Mich at 395. On remand under *Crosby*, a defendant is first given an opportunity to inform the trial court that he will not seek resentencing. *Id*. at 398. If the defendant avails himself of this opportunity, the original sentence stands. *Id*. If, however, the defendant fails to timely inform the trial court of his desire to forego resentencing or affirmatively requests resentencing, the trial court must then determine whether it "would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id*. at 397.

A *Crosby* remand returns the case to the trial court in a "presentence posture, allowing the trial court to consider every aspect of the defendant's sentence de novo." *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325); slip op at 3. See also *People v Williams (After Second Remand)*, 208 Mich App 60, 65; 526 NW2d 614 (1994). Given that *Lockridge* rendered the sentencing guidelines purely advisory, the trial court may rescore the sentencing guidelines on the basis of judicially-found facts, see *Steanhouse*, 500 Mich at 466-467, provided that its scoring determinations are supported by a preponderance of the evidence, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court must consult the resulting guidelines range, but retains its discretion to depart from that range. *Lockridge*, 498 Mich at 391-392. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 471-472. See also *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).

## 1. APPLICATION OF *LOCKRIDGE* AND THE PRESUMPTION OF VINDICTIVENESS

On appeal, defendant argues that the trial court's authority on remand was limited to correcting scoring errors predicated on judicial fact finding. Accordingly, defendant argues that, because the error necessitating remand was the trial court's use of judicial fact finding to score Offense Variable (OV) 4, the only correction that the trial court could make on remand was to delete the points scored for OV 4 on the basis of judicial fact finding. We disagree. As noted previously, a *Crosby* remand returns the case to the trial court in a "presentence posture, allowing the trial court to consider every aspect of the defendant's sentence de novo." *Lampe*, ___ Mich App at ___; slip op at 3. Thus, the trial court may receive new sentencing information, may rescore the guidelines (even utilizing judicial fact finding), and may exercise its discretion to depart from the sentencing-guidelines range.[3]

Relatedly, defendant argues that the trial court's sentence on remand was presumptively vindictive because it exceeded his original sentence. See *North Carolina v Pearce*, 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969),[4] overruled in part by *Alabama v Smith*, 490 US 794; 109 S

---

[3] We note that the trial court's assessment on remand of 10 points for OV 4 was supported by a preponderance of the evidence. The trial court should score OV 4 at 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The victim, in her original statement, stated that she sought professional help because of the anxiety caused by the bank robbery. In her updated statement, the victim stated that, despite the passage of eight years since the offense, she still becomes anxious when she enters a bank. The victim's statements were sufficient to score OV 4 at 10 points. See *People v Gibbs,* 299 Mich App 473, 493; 830 NW2d 821 (2013).

[4] The *Pearce* Court noted:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. [*Pearce*, 395 US at 725-726.]

Ct 2201; 104 L Ed 2d 865 (1989). Again, we emphasize that a *Crosby* remand returns the case to the trial court in a "presentence posture, allowing the trial court to consider every aspect of the defendant's sentence de novo." *Lampe*, ___ Mich App at ___; slip op at 3. It is axiomatic then that, if the trial court has discretion to impose an out-of-guidelines sentence during the original sentencing, on *de novo* resentencing there can be no presumption of vindictiveness for the trial court's exercise of that discretion—especially when our Supreme Court has stricken the substantial-and-compelling requirement for departure and replaced it with a reasonableness review. See *Lockridge*, 498 Mich at 391-392. Indeed, the basic purpose of *de novo* resentencing is to make the sentencing decision anew, without any respect for the prior (now invalid) sentence. Accordingly, defendant's argument is without merit.[5]

## 2. *EX POST FACTO* PROHIBITION

Next, defendant argues that the retroactive application of the advisory sentencing guidelines violates the prohibition against *ex post facto* laws when the application results in an increase in the defendant's sentence compared to the sentence originally imposed. Effectively, defendant argues that, to pass constitutional muster, the original sentence must act as a cap on the trial court's sentencing discretion on remand. We disagree.

A law violates the *ex post facto* clauses[6] when, in relevant part, it criminalizes conduct that was innocent when done or when it increases the punishment that was applicable when the crime was committed. *Callon*, 256 Mich App at 317-318. The United States Supreme Court has recognized that due process applies the *ex post facto* clause to judicial decisions construing or applying a statute because a state court may not do through a judicial decision what the *ex post facto* prohibition bars its legislature from doing. See *Rogers v Tennessee*, 532 US 451, 458-459; 121 S Ct 1693; 149 L Ed 2d 697 (2001). The rationale for this rule rests "on core due process

---

[5] The federal decisions addressing this issue have uniformly held that a remand predicated on changes to the sentencing regime precludes application of the presumption of vindictive sentencing:

> When there is no relevant legal or factual change between sentence and resentence, the motive for an increase in punishment is indeed suspect. But [*US v Booker*, 543 US 220, 125 S Ct 738; 160 L Ed 2d 621 (2005)] brought about a fundamental change in the sentencing regime. The guidelines, mandatory when [the defendant] was sentenced, are now advisory. Were he to be resentenced, it would be under a different standard, one that would entitle the judge to raise or lower the sentence, provided the new sentence was justifiable under the standard of reasonableness. No inference of vindictiveness would arise from the exercise of the judge's new authority. [*United States v Goldberg*, 406 F3d 891, 894 (CA 7, 2005) (internal citations omitted); accord *United States v Williams*, 444 F3d 250, 254 (CA 4, 2006).]

[6] "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." US Const, Art 1, § 10. "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." Const 1963, Art 1, § 10.

concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* Accordingly, the *ex post facto* prohibition will preclude retroactive application of those decisions implicating notice, foreseeability, and the right to fair warning—that is, those decisions that were unexpected and are indefensible by reference to the law previously expressed. *Id.* at 462.

In cannot be said that our Supreme Court's decision in *Lockridge* criminalizes conduct which was previously innocent—robbery was criminal at the time of defendant's offense and remains so post-*Lockridge*. Thus, defendant's *ex post facto* challenge must be premised on a lack of fair warning of increased punishment. On this ground, too, defendant's challenge fails. Our Supreme Court's decision to rectify the constitutional infirmity in the mandatory sentencing guidelines by making the guidelines advisory did not alter the maximum penalty applicable to defendant when he committed the crimes at issue. Both offenses were punishable by up to life in prison when committed and remain punishable by up to life in prison under the advisory guidelines. See MCL 750.529; MCL 750.531. See also *US v Barton*, 455 F3d 649, 656-657 (2006) (noting that a majority of federal circuits addressing the issue have held that unchanging statutory maximums preclude any *ex post facto* notice issue). Further, although the formerly mandatory sentencing guidelines constrained the trial court's exercise of discretion, persons who committed crimes under the guidelines were on notice that the trial court had discretion to depart from them. See MCL 769.34(3). See also *Barton*, 455 F3d at 655-656. Indeed, the trial court opined at defendant's original sentencing that this was a case where a departure sentence was a distinct possibility. Where the trial court seriously considered an out-of-guidelines sentence at defendant's original sentencing, defendant can hardly claim surprise at an out-of-guidelines sentence issued on *de novo* resentencing.

Finally, we note that the United States Supreme Court's decision in *Alleyne*, which prompted our Supreme Court's decision in *Lockridge*, was not fashioned out of whole cloth. Rather, *Alleyne* was a logical extension of nearly a decade of decisions "strik[ing] down mandatory sentencing systems at the state and federal levels." *Alleyne*, 570 US at 120. Indeed, the majority of these decisions predate defendant's offense. See *id.* Accordingly, it cannot be said that *Lockridge* was unexpected and indefensible by reference to the law previously expressed. *Rogers*, 532 US at 462. Thus, we conclude that retroactive application of *Lockridge* does not offend the prohibition against *ex post facto* laws—even when its application results in a lengthier sentence than the one previously imposed.[7]

## B. THE TRIAL COURT'S SENTENCE

Having addressed any misconceptions regarding the trial court's authority on remand, we now turn to defendant's other arguments on appeal.

---

[7] We note that no federal court has found that the retroactive application of advisory sentencing guidelines results in a due-process or *ex post facto* violation. See *Barton*, 455 F3d at 656.

## 1. OPPORTUNITY TO AVOID RESENTENCING

Defendant argues that several errors denied him the opportunity that *Lockridge* guarantees him to avoid resentencing. According to defendant, the trial court abused its discretion when it denied his motion to withdraw his request for resentencing and when it failed to rule on his motion for substitute counsel before deciding to resentence him. Alternatively, defendant argues that his counsel's ineffectiveness denied him an opportunity to avoid resentencing. Each of defendant's arguments is without merit.

As a preliminary matter, defendant has failed to identify any authority that requires a trial court to consider a motion for substitute counsel before it may consider any subsequently filed motion by the attorney who was the subject of the motion for substitution. Accordingly, defendant has abandoned this issue. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

Regarding his other arguments, defendant has not provided this Court with any credible evidence that he wished to avoid resentencing *before* the trial court indicated that it would increase his sentence. At the *Ginther* hearing, defense counsel testified that he informed defendant of the *Crosby* remand procedure and defendant's opportunity to avoid resentencing. Defense counsel also testified that he reminded defendant that, at the original sentencing, the trial court had expressed an inclination to depart upward from the sentencing guidelines. Accordingly, defense counsel informed defendant that an out-of-guidelines sentence was a possibility at resentencing. Despite these explanations, defense counsel maintained that defendant wished to be resentenced. Defense counsel acknowledged that he may have failed to communicate timely with defendant for a portion of the time the case was pending before the trial court (and that, because of this untimely communication, defendant sought other counsel), but testified that he ultimately fulfilled defendant's wishes by requesting resentencing. According to defense counsel, once the trial court indicated its intent to increase defendant's sentence in its order for resentencing, he moved to withdraw the request for resentencing. For his part, defendant offered a document entitled "Judicial Notice" in which he claims he expressed his intent to forego resentencing. That document, however, was not registered with the trial court and was not in any attorney's records. The document first appeared as an attachment to a document that defendant submitted on his own behalf *after* the trial court had already determined that it would resentence defendant.

Given that its decision eliminated the requirement of a substantial and compelling reason to depart from the sentencing guidelines, the *Lockridge* court granted defendants entitled to a remand under its opinion an opportunity to avoid resentencing by informing the trial court of their decision to forego resentencing. *Lockridge*, 498 Mich at 398; *Crosby*, 397 F3d at 118. Yet, a defendant must seize upon this opportunity before the trial court expresses its intent to resentence the defendant. *Id*. Thus, because the record in this case is devoid of any indication that defendant wished to forego resentencing *before* the trial court expressed its intention to increase his sentence, we conclude that the trial court did not abuse its discretion by denying defendant's motion to withdraw his request for resentencing.

Further, while it appears that defense counsel could have been timelier when communicating with defendant and filing motions on defendant's behalf, we may only grant

relief when counsel's unprofessional errors affected the outcome of the proceedings. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Here, any errors resulted, at most, in a delayed *request* for resentencing. Defendant was not denied his opportunity to avoid resentencing because defendant did not wish to avoid resentencing until the trial court expressed its intention to increase his sentence. Accordingly, because any error did not affect the outcome of the proceedings, defendant is not entitled to relief.

## 2. UPDATED PRESENTENCE INVESTIGATION REPORT

Defendant argues that the trial court erred by sentencing him using an insufficiently updated presentence investigation report (PSIR). As defendant correctly notes on appeal, our Supreme Court has held that a trial court should not resentence a defendant without the benefit of a "reasonably updated presentence report." *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980).

Given the time between defendant's offense and his resentencing, on remand, an agent updated defendant's PSIR to reflect defendant's conduct while incarcerated. The updated PSIR indicates that, while incarcerated, defendant only had one citation for misconduct. Defendant argues that the updated PSIR was insufficient because it failed to include information about voluntary programs defendant completed while incarcerated. While this information does not appear in defendant's updated PSIR, defendant did provide the trial court with documentation regarding the programs he voluntarily completed in prison. As our Supreme Court recognized in *People v Hemphill*, 439 Mich 576, 581-582; 487 NW2d 152 (1992), when it comes to sentencing, it is not particularly important how the information gets before the trial court; rather, it is important that the trial court have the relevant information available for sentencing. Accordingly, defendant's provision of his program documents to the trial court alleviates any concern that inaccurate or incomplete information hampered the trial court's sentencing decision.

Defendant also argues that the PSIR was inaccurate because it did not include a victim impact statement by a different victim, whom defendant claims would have professed his innocence. Defendant, however, has presented no evidence that this alleged other victim had or could have provided such a statement. Accordingly, because defendant has failed to establish the factual predicate for his claim, his claim is without merit. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003).

## 3. PROPORTIONALITY

Defendant next argues that the trial court's out-of-guidelines sentence was not proportionate to his criminal conduct. As noted previously, we review sentences in excess of the sentencing guidelines for reasonableness. *Lockridge*, 498 Mich at 391-392. A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 471-472. The purpose of the proportionality requirement is to combat unjustified disparity in sentencing, thereby ensuring that "similar offense and offender characteristics receive substantially similar sentences." *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017) (internal citation and quotation marks omitted). Under our system of sentencing, this principle of proportionality is first entrusted to the Legislature, which is tasked with "grading the seriousness and harmfulness of a given crime

and given offender within the legislatively authorized range of punishments." *Id*. at 524 (internal citation and quotation marks omitted). Although the Legislature's guidelines are advisory, they remain a highly relevant consideration in a trial court's exercise of its sentencing discretion. *Steanhouse*, 500 Mich at 469-470, 474-475. Indeed, a sentence within the Legislature's guidelines range is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Thus, when sentencing an individual defendant, the trial court must first score the sentencing guidelines and take them into account. *Lockridge*, 498 Mich at 392. If the trial court chooses to depart from the sentencing guidelines, it must justify the departure on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (internal citation and quotation marks omitted). Relevant factors for determining whether an out-of-guidelines sentence is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (internal citations omitted).

In this case, the trial court calculated defendant's guidelines on remand at 126 to 210 months of imprisonment. The trial court, however, identified several factors that it felt were not adequately reflected in defendant's guidelines scores. The trial court noted defendant's significant criminal history, including three serious criminal convictions in 1980 and a first-degree criminal-sexual-conduct conviction in 1982. The trial court noted that defendant committed the instant offense while on parole from the sexual-misconduct conviction, indicating that defendant was not a strong candidate for reform. The trial court also found noteworthy the fact that, despite defendant's criminal history, defendant was not scored as a fourth-offense habitual offender because of a notice issue in the original proceedings. Finally, the trial court noted that each of defendant's current convictions carried a maximum penalty of life in prison. Opining that the guidelines range did not accurately reflect the serious recidivism of this defendant and the brazenness of his crimes, the trial court imposed a sentence of 360 to 720 years in prison for each conviction.

The sentence imposed by the trial court was proportionate to the seriousness of defendant's crimes and background. Notably, had the fourth-habitual enhancement been applied, it would have provided for a minimum sentence of up to 420 months in prison. See MCL 777.21(3). As stated previously, sentences within the legislative guidelines are presumptively proportionate. While we are unable to apply that presumption in this case given *Lockridge*, it stands to reason that defendant's criminal conduct places him in a similar position to other repeat offenders notwithstanding the notice error in the original proceeding.[8] Defendant has committed six serious criminal offenses since he was 17 years old, separated by only short periods of freedom. Indeed, defendant committed the instant offense while on probation for a serious

---

[8] We reject defendant's related argument that the trial court formulaically applied the fourth-habitual enhancement. Rather, the trial court made an individualized determination that defendant's conduct warranted a sentence in excess of the recommended range, reasoning by analogy to the fourth-habitual enhancement in the same manner as we do on appeal.

sexual-conduct offense. Although the trial court's departure from defendant's guidelines range was substantial, it was not unwarranted. Defendant's argument to the contrary is without merit.

## 4. RESTITUTION

Finally, defendant argues that the trial court erred when it refused to modify its order of restitution on the ground that Odom established that the collection of funds from his prison account amounted to an undue hardship. Under the Crime Victim's Rights Act, MCL 780.751 *et seq*, the trial court was required to order defendant to make full restitution to the victims of his crimes. *In re Lampart*, 306 Mich App 226, 232-233; 856 NW2d 192 (2014). When ordering restitution, the "defendant's ability to pay is irrelevant; only the victim's actual losses from the criminal conduct are to be considered." *Id*. at 233. The defendant's ability to pay only becomes an issue when enforcement of the restitution order has begun. See *People v Jackson*, 483 Mich 271, 292; 769 NW2d 630 (2009).

Under MCL 791.220h, the Department of Corrections is required to collect 50% of all the funds that a prisoner receives over $50 per month and forward it as payment of court-ordered restitution. Here, defendant asserted that he does not have more than $50 in his account and that he only receives $9 per month, meaning that the department was prohibited from remitting any funds from defendant's prisoner account for the payment of restitution. Defendant has provided no evidence that the department has violated this prohibition or that any other type of enforcement has been taken on the restitution order. Therefore, because defendant failed to establish the enforcement of the court-ordered restitution, any issue regarding defendant's ability to pay restitution was not ripe for the trial court's consideration. See *People v Robar*, 321 Mich App 106, 128; 910 NW2d 328 (2017) ("[T]he ripeness doctrine precludes adjudication of merely hypothetical claims.").

## III. CONCLUSION

Our Supreme Court's remand order returned this case to the trial court in a presentence posture, entitling the trial court to consider *de novo* whether defendant's conduct justified an out-of-guidelines sentence. After receiving updated sentencing information, the trial court chose to impose a sentence exceeding the range recommended by the sentencing guidelines. Its out-of-guidelines sentence was reasonable, given defendant's extensive criminal history and tendency to reoffend. Therefore, for the reasons stated in this opinion, we affirm defendant's sentence.

/s/ Patrick M. Meter
/s/ Deborah A. Servitto
/s/ James Robert Redford