Nicholas **SCHWEITZER,** Petitioner,

v.

Jesse **WILLIAMS,** Respondent.

**Case No. 3:08 CV 2250.**

United States District Court,
N.D. Ohio,
Western Division.

Feb. 19, 2010.

Jacob A. Cairns, Upper Arlington, OH, for Petitioner.

Erin C. Reed, Columbus, OH, for Respondent.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, District Judge.

### INTRODUCTION

Petitioner Nicholas Schweitzer filed a Petition for a Writ of Habeas Corpus (Doc. No. 1). The case was referred to United States Magistrate Judge Greg White for a Report and Recommendation (R & R) pursuant to Local Rule 72.2(b)(2). The Magistrate Judge recommended the Petition be dismissed (Doc. No. 9).

Petitioner filed an Objection (Doc. No. 10) to the R & R, reasserting four grounds for relief: (1) The Ohio court of appeals acted contrary to clearly established federal law in holding that the retroactive elimination of the statutory elements of a criminal offense did not violate Petitioner's rights under the United States Constitution; (2) the decision of the Ohio court of appeals in Petitioner's case, and the decision of the Ohio Supreme Court in *Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), on which the court of appeals relied, were objectively unreasonable applications of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); (3) the Ohio court of appeals applied *Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), in an objectively unreasonable manner in upholding the retroactive application of *Foster* to Petitioner's case; and (4) the Ohio court of appeals rendered an objectively unreasonable decision in refusing to extend the direct application of the Ex Post Facto Clause to a context where it clearly should have been controlling.

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings. For the reasons below,

the Court adopts the Magistrate's R & R in its entirety and denies the petition.

## BACKGROUND

The R & R accurately recites the relevant factual and procedural background from the record (Doc. No. 9, pp. 1–7). In 2004, Petitioner was sentenced to eight years for aggravated burglary and seven years for felonious assault, to be served consecutively, as well as eleven months for possession of criminal tools, to be served concurrently. In 2006, in light of the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), Petitioner was re-sentenced to these same terms of incarceration. Petitioner now argues the re-sentencing was erroneous.

## ANALYSIS

Under 28 U.S.C. § 2254(d)(1), a federal habeas court may grant the writ only if a state court arrives at a conclusion that is "contrary to" or an "unreasonable application of" clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Petitioner's Objection to the R & R merely rehashes his initial arguments. The R & R thoroughly analyzed Petitioner's claims and correctly concluded that he did not meet the standards for habeas relief.

This Court further notes that Petitioner's arguments have previously been rejected by federal courts reviewing habeas claims by Ohio prisoners. *See, e.g., Newsome v. Brunsman*, No. 1:08 CV 1938, 2010 WL 319792, at *2–3 (N.D.Ohio Jan. 20, 2010) (rejecting a claim that *Foster* altered substantial rights in violation of ex post facto prohibitions); *Ross v. Kelley*, 662 F.Supp.2d 903, 928–39 (N.D.Ohio 2009) (rejecting objections identical to Petitioner's arguments here); *Keith v. Voorhies*, No. 1:06 CV 2360, 2009 WL 185765, at *11 (N.D.Ohio Jan. 23, 2009) (finding the remedy provided in *Foster* very similar to the remedy provided in *Booker*, and rejecting

an ex post facto challenge to the retroactive application of *Foster*).

## CONCLUSION

This Court adopts the Magistrate's R & R and denies the Petition for Writ of Habeas Corpus (Doc. No. 1).

Further, under 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith and that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, this Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

## *REPORT AND RECOMMENDATION*

GREG WHITE, United States Magistrate Judge.

Petitioner, Nicholas Schweitzer ("Schweitzer"), through counsel, challenges the constitutionality of his sentence in the case of *State v. Schweitzer*, Auglaize County Court of Common Pleas Case No. 2004–CR–57. Schweitzer filed his Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 23, 2008. On February 5, 2009, Warden Jesse Williams ("Respondent") filed his Answer/Return of Writ. (Doc. No. 7.) Schweitzer filed a Traverse on February 20, 2009. (Doc. No. 8.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Schweitzer's Petition be denied.

## I. Procedural History

### A. Conviction

In May 2004, an Auglaize County Grand Jury charged Schweitzer with one count of aggravated burglary, one count of felonious assault, two counts of attempted murder, and one count of possession of crimi-

nal tools. (Resp. Exh. 1.) Schweitzer filed a motion claiming he was incompetent to stand trial and not guilty by reason of insanity. (Resp. Exh. 9, ¶ 4.) This motion was withdrawn after the court received a Forensic Psychological Report which noted that Schweitzer was malingering in an attempt to feign mental illness. *Id.*

On October 13, 2004, Schweitzer, through counsel, entered a plea of guilty to aggravated burglary, felonious assault and possession of criminal tools. (Resp. Exh. 2.) The state dismissed the remaining counts. *Id.* In the plea negotiation, the state advised that it was recommending a prison term of fifteen years. (Resp. Exh. 23, Cert. Opp. Appendix–1.) On December 10, 2004, Schweitzer was sentenced to eight years for aggravated burglary, seven years for felonious assault, and eleven months for possession of criminal tools. (Resp. Exh. 3.) The aggravated burglary and felonious assault sentences were ordered to run consecutive to each other, but concurrent with the criminal tool sentence, for an aggregate prison term of fifteen years. *Id.*

### B. Direct Appeal

Schweitzer, through counsel, filed a timely Notice of Appeal with the Court of Appeals for the Third District ("state appellate court") raising the following assignments of error:

1. The trial court erred and violated the Appellant–Defendant's right to due process of law by imposing a sentence based upon the court creating its own psychological opinion as to the effect of the Appellant–Defendant's diagnosed mental illness, borderline personality disorder, upon his actions in committing the crimes.

2. The trial court erred by finding that the failure to show genuine remorse was a significant factor that the offender would likely commit a future crime, when uncontroverted expert testimony based on extensive psychological testing showed that the Appellant suffered from borderline personality disorder, a mental illness whose symptoms, as well as the treating medications, result in the patient showing a lack of remorse.

3. The trial court erred by finding that pursuant to O.R.C. § 2929.12, the likely to commit future crimes factors outweigh the factors indicating that the offender is not likely to commit future crimes.

4. The trial court erred by sentencing the Defendant to consecutive sentences in that the O.R.C. § 2929.14(E) category findings are not based on reasons supported by factual evidence in the record and are not closely related to the category findings.

5. The trial court erred by denying the Appellant–Defendant's due process right to a fair sentencing hearing where he was prevented from presenting information relevant to the imposition of sentence by a court that had displayed an inflexible predisposition to consecutive sentences.

(Resp. Exh. 4.) Schweitzer, with approval of the appellate court, filed a supplemental brief on sentencing issues in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) raising the following assignment of error:

1. The sentences imposed upon Appellant must be vacated because they were rendered in violation of Appellant's Sixth Amendment right to trial by jury and Article I § 10 of the Ohio Constitution. Specifically, sentencing Appellant to more than the minimum sentence on charges of aggravated burglary, felonious assault and possessing criminal tools vio-

lates the United States and Ohio Constitutions. Sentencing Appellant to consecutive sentences on the charges of aggravated burglary and felonious assault violate the same United States and Ohio Constitutions.

(Resp. Exh. 7.) On October 24, 2005, the state appellate court affirmed. (Resp. Exh. 9.)

On November 29, 2005, Schweitzer, through counsel, filed a Notice of Appeal to the Ohio Supreme Court raising the following propositions of law:

1. The Sixth and Fourteenth Amendments to the Federal Constitution forbid the imposition of a non-minimum sentence under § 2929.14(D) upon a first time offender where the required findings have not been proven beyond a reasonable doubt to a jury and have not been admitted to by the defendant.

2. The Sixth and Fourteenth Amendments to the Federal Constitution forbid the imposition of consecutive sentences under § 2929.14(E) where the required findings have not been proven beyond a reasonable doubt to a jury and have not been admitted to by the defendant.

3. Under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and Article I § 10 of the Ohio Constitution, evidence of a diagnosed mental illness may only be utilized as an aggravating factor in criminal sentencing to the extent that it relates to the future dangerousness of the offender. A Court may not utilize an offender's diagnosed personality disorder as a basis for finding that the defendant is guilty of a greater degree of personal culpability than offenders who do not suffer from mental illness.

(Resp. Exh. 10.) On May 3, 2006, the Ohio Supreme Court reversed and remanded for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Resp. Exh. 11.)

### C. Resentencing and Direct Appeal

On June 1, 2006, Schweitzer was resentenced in the Auglaize County Common Pleas Court to the same terms of incarceration as his original sentence. (Resp. Exh. 12.)

Schweitzer, through counsel, again filed a timely Notice of Appeal in the Third District Court of Appeals raising the following assignments of error:

1. The Court of Common Pleas violated Appellant's right to trial by jury by sentencing Appellant to a term of incarceration which exceeded the statutory maximum mandated by the Sixth and Fourteenth Amendments. The decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1 [845 N.E.2d 470], which purports to authorize sentences in excess of the statutory maximum, is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.

2. The Court of Common Pleas violated Appellant's rights under the *Ex Post Facto* Clause of the Federal Constitution by sentencing Appellant to a term of incarceration which exceeded the maximum penalty available under the statutory framework at the time of the offense. The decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1 [845 N.E.2d 470], which purports to authorize the sentence rendered against Defendant Schweitzer, is incompatible with the controlling precedent of the United

States Supreme Court and must be rejected.

3. The Court of Common Pleas violated Appellant's rights under the Fourteenth Amendment to the Federal Constitution by sentencing Appellant pursuant to the decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1 [845 N.E.2d 470], because the holding of *Foster* is invalid under *Rogers v. Tennessee* (2001), 532 U.S. 451 [121 S.Ct. 1693, 149 L.Ed.2d 697].

4. The Rule of Lenity requires the imposition of minimum and concurrent sentences, and the ruling of the Court of Common Pleas to the contrary must be reversed.

5. The sentence imposed upon Defendant Schweitzer was an abuse of discretion.

(Resp. Exh. 13.) On November 20, 2006, the state appellate court affirmed the new sentence in all respects. (Resp. Exh. 16.)

Schweitzer, through counsel, filed an appeal with the Ohio Supreme Court on December 28, 2006, raising the following propositions of law:

1. When a criminal sentence has been rendered in violation of the right to trial by jury as protected by the Sixth and Fourteenth Amendments to the Federal Constitution, the error cannot be remedied by retroactively eliminating the statutorily-mandated factual prerequisites to the imposition of an otherwise-unavailable penalty.

    i. The limitations imposed on criminal sentencing by the jury trial guarantee of the Sixth and Fourteenth Amendments represent a fundamental reservation of power in the constitutional structure of American government.

    ii. Retroactively eliminating *Apprendi* enforceable sentencing enhance-

ments is fundamentally incompatible with the requirements imposed upon the criminal justice system by the Sixth and Fourteenth Amendments.

2. If the text of a penal statute is modified while direct review of a criminal sentence is pending, the *Ex Post Facto* Clause of the Federal Constitution prohibits the imposition of any sentence exceeding the maximum penalty available under the statutory framework as it previously existed at the time of the underlying offense.

3. The Due Process Clause of the Fourteenth Amendment prohibits the judiciary from retroactively expanding the range of penalties which may be lawfully imposed as punishment for a criminal conviction.

4. The Rule of Lenity requires the application of pre-*Foster* sentencing presumptions to cases which were not yet final when *Foster* was decided.

5. It is an abuse of discretion for a sentencing Court to refuse to ascribe any mitigating weight of overwhelming evidence of mental illness.

(Resp. Exh. 17.) On April 18, 2007, the Ohio Supreme Court declined to exercise jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Resp. Exh. 19.)

On April 24, 2007, Schweitzer filed a motion alleging that as a result of the decision of the U.S. Supreme Court in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), reconsideration was warranted. (Resp. Exh. 20.) On June 6, 2007, the Ohio Supreme Court denied the application. (Resp. Exh. 21.)

**D. Writ of Certiorari to the U.S. Supreme Court**

On September 4, 2007, Schweitzer filed a petition for writ of certiorari with the

U.S. Supreme Court citing the following reasons for granting the writ:

1. This case presents an issue of profound importance under the Federal Constitution.

2. The precedent of this Court is clear and unambiguous with regard to the applicability of the Sixth and Fourteenth Amendments to criminal sentencing.

3. The holding of the Ohio Supreme Court in *Foster* is incompatible with the precedent of this Court.

4. Retroactively eliminating *Apprendi*-enforceable sentencing enhancements is fundamentally incompatible with the requirement imposed upon the criminal justice system by the Sixth and Fourteenth Amendments.

5. *Cunningham v. California* [549 U.S. 270], 127 S.Ct. 856 [166 L.Ed.2d 856] (2007), confirms that the remedial holding of Foster is unconstitutional.

6. The precedent of this Court regarding the *Ex Post Facto* Clause and the Due Process Clause limitations on retroactive judicial decisions does not support the retroactive judicial alteration of the sentencing statutory maximum.

7. Certiorari is warranted to ensure that the guarantees of the Sixth Amendment remain enforceable with regard to criminal sentencing.

(Resp. Exh. 22.) On November 13, 2007, the U.S. Supreme Court denied the petition. (Resp. Exh. 24.)

### E. Federal Habeas Petition

On September 23, 2008, Schweitzer filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

**Ground One:** The Ohio Court of Appeals acted contrary to clearly established federal law in holding that retroactively eliminating the statutory elements of a criminal offense did not violate Petitioner's rights under the United States Constitution.

1. The Ohio Court of Appeals applied rules of law which contradict the governing precedent of the United States Supreme Court.

2. The rights to trial by jury and proof beyond a reasonable doubt are of paramount constitutional importance in the context of criminal sentencing.

3. There is no constitutional distinction between a statutory element of a criminal offense and a sentencing enhancement subject to the rule of *Apprendi.*

4. The decision of the Ohio Supreme Court in *Foster* cannot be reconciled with the fact that there is no constitutional distinction between statutory elements and sentencing enhancements subject to the rule of *Apprendi.*

   a. A statutory element of a criminal offense may not be retroactively eliminated.

   b. *Booker* did not authorize sentences which exceeded the previously-applicable statutory maximum.

   c. *Blakely* made clear that the statutory maximum as it existed at the time of the commission of the offense is controlling.

5. *United States v. Barton,* 455 F.3d 649 (2006) and subsequent Sixth Circuit decisions do not foreclose Petitioner's claim.

6. The Ohio Court of Appeals acted contrary to clearly established federal law by retroactively applying the decision of the Ohio Supreme Court in *State v. Foster* to Petitioner's case.

**Ground Two:** The decision of the Ohio Court of Appeals in Petitioner's case, and the decisions of the Ohio Supreme Court in *Foster* upon which the Court of Appeals relied, constituted an

objectively unreasonable application of *United States v. Booker*, 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621] (2005).

1. The remedy adopted by the Ohio Supreme Court in *State v. Foster* was dramatically different from that utilized in *United States v. Booker.*

2. Because the Ohio Court of Appeals relied on *Foster* in upholding Petitioner's sentence, it was also an unreasonable application of the holding of *Booker.*

**Ground Three:** The Ohio Court of Appeals applied *Rogers v. Tennessee,* 532 U.S. 451 [121 S.Ct. 1693, 149 L.Ed.2d 697] (2001) in an objectively unreasonable manner.

**Ground Four:** The Ohio Court of Appeals rendered an objectively unreasonable decision in refusing to extend the direct application of the *Ex Post Facto* Clause to a context where it clearly should have been controlling.

(Doc. No. 1.)

## II. Review on the Merits

### A. Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy,* 521 U.S. 320, 326–27, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2009).

■ Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir.2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld,* 404 F.3d at 1010, *quoting Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002).

■ A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413, 120 S.Ct. 1495. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410–12, 120

S.Ct. 1495. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed.Appx. 511, 516 (6th Cir.2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998).

## B. Petitioner's Argument and Pertinent Law

■ Initially, Schweitzer challenged both the length of his individual sentences and the court's order that two were to run consecutively. Subsequent to his Petition being filed, the United States Supreme Court decided *Oregon v. Ice*, —— U.S. ——, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009) wherein the Court declined to extend the *Apprendi* line of cases to consecutive sentences. Schweitzer concedes his initial challenge to the consecutive portion of his sentence in the Traverse. Therefore, after all is said and done, the only remaining question is whether Schweitzer could constitutionally receive more than the minimum sentence authorized by law for each of his statutory violations. If so, even if run consecutively, his aggregate sentence could not exceed five and one-half years instead of the fifteen years he is currently serving.

At the time of Schweitzer's conviction, Ohio law provided that a minimum sentence must be imposed unless the court finds that the defendant had previously served a prison term or that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender or others. *See* O.R.C. § 2929.14(B) (2003).

■ The United States Supreme Court has clearly established that, except for the existence of a prior conviction, facts supporting the increase of a sentence beyond the "statutory maximum" must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See Blakely v.*

*Washington,* 542 U.S. 296, 303–04, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*Apprendi v. New Jersey* involved a New Jersey hate crime statute that permitted a twenty-year sentence, rather than the usual ten-year maximum, if the judge determined the crime was committed "with a purpose to intimidate * * * because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Apprendi* at 468–69, 120 S.Ct. 2348 (citations omitted). The United States Supreme Court found that Apprendi's sentence violated his Sixth Amendment right to a jury trial because it exceeded the statutory maximum sentence based upon judicial factfinding. The *Apprendi* Court ruled that the jury, rather than the judge, must find all of the facts essential to punishment. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. The *Apprendi* Court was careful to state that the ruling does not remove all discretion from sentencing judges:

> nothing in this history [of sentencing procedures] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. *See, e.g., Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)

*Id.* at 481, 120 S.Ct. 2348 (emphasis in original).

In *Blakely v. Washington*, the defendant was sentenced to approximately three years more than the applicable standard sentencing range because the judge determined Blakely had acted with "deliberate cruelty." *Blakely*, 542 U.S. at 298, 124 S.Ct. 2531. The facts supporting that finding were neither admitted by the defendant nor found by a jury. Thus, the judge could not have imposed the "exceptional" sentence without engaging in unconstitutional factfinding. *Id.* at 304, 124 S.Ct. 2531. The United States Supreme Court extended the rule in *Apprendi* by defining the "statutory maximum" to be "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303, 124 S.Ct. 2531. "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment, [citation omitted]" and the judge exceeds his proper authority. *Id.* at 304, 124 S.Ct. 2531.

The Supreme Court further ruled in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing Guidelines. Thus the Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based upon judicial factfinding rather than facts found by a jury beyond a reasonable doubt. *Id.* at 243–44, 125 S.Ct. 738. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244–264, 125 S.Ct. 738 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Ohio Supreme Court decided *Foster* which struck down O.R.C. § 2929.14(B), among other sections, as unconstitutional under *Blakely* because it required a court to make findings, not determined by a jury beyond a reasonable doubt before the imposition of a non-minimum sentence on an offender who had never been to prison. *Foster*, 109 Ohio St.3d at 26, 845 N.E.2d 470. The Ohio Supreme Court, applying a remedy similar to that adopted in *Booker*, severed O.R.C. § 2929.14(B) thereby allowing trial courts full discretion to impose a prison sentence within the statutory range without making findings or giving reasons for exceeding the minimum sentence. *Id.* at 30, 845 N.E.2d 470. The *Foster* Court held that its ruling must be applied to all cases, like Schweitzer's, still on direct review or not yet final. *Id.* at 31, 845 N.E.2d 470.

On June 1, 2006, Schweitzer was resentenced to the same fifteen year term of incarceration. He challenged the application of the *Foster* remedy in his case, arguing that it violated the Due Process and *Ex Post Facto* Clauses and that it was invalid under *Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). The state appellate court upheld the sentence as follows:

{¶ 11} Schweitzer asserts in his second and third assignments of error that the application of *Foster* to his case and sentence violates the *ex post facto* clause of the United States Constitution. He argues that his due process rights are violated because the effect of *Foster* is to create an *ex post facto* law. He contends that *Foster* applies retroactively and increases the penalty for offenses committed prior to the court's decision. In his second assignment of error, he

alleges that the announcement of *Foster* is incompatible with the controlling precedent of the United States Supreme Court and must be rejected. In his third assignment of error, he claims that the decision rendered in Foster is invalid under *Rogers v. Tennessee* (2001), 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697.

{¶ 12} However, for the reasons articulated in *State v. McGhee*, 3rd Dist. No. 17–06–05, 2006–Ohio–5162 [2006 WL 2796275 (Oct. 2, 2006) ], we find no merit in Schweitzer's arguments that his sentence violates his due process rights. Schweitzer entered a plea of guilty on October 13, 2004. He was sentenced to a fifteen year prison term on December 10, 2004. He filed a notice of appeal with this Court which we affirmed the trial court's judgment. Schweitzer then filed an appeal with the Supreme Court of Ohio. The Supreme Court of Ohio announced its decision in *Foster* on February 27, 2006. On May 18, 2006, the Supreme Court of Ohio reversed the judgment of this Court in this case and remanded the case to the trial court for resentencing.

{¶ 13} On June 1, 2006, the trial court resentenced Schweitzer to fifteen years in prison. We note, as to this case, that the offense occurred subsequent to the United States Supreme Court's holding in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, which provided notice that a major shift in sentencing was likely to occur and supports our conclusion in *McGhee* that the remedy announced in *Foster* does not violate due process. Likewise, the sentencing range for his felonies has remained unchanged, so Schweitzer had notice of the potential sentence for his offenses. Therefore, we find Schweitzer's second and third assignments of error are without merit.

\*　　\*　　\*

{¶ 21} Furthermore, the record reflects that the trial court considered the record, oral statements, any Victim Impact Statement, and Pre–Sentence Report prepared, as well as the principles and purposes of sentencing under R.C. 2929.11 and has balanced the seriousness and recidivism factors under R.C. 2929.12. Moreover, during the sentencing hearing the trial court stated:

> that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender; considering the need for incapacitating the offender; deterring the offender and others from future crime; rehabilitating the offender and making restitution to the victim of the offense, the public or both and recognizing that on those charges that you have plead guilty to, the Court could have gone up to nineteen (19) years; that a fifteen (15) year sentence, I believe is appropriate and, indeed, necessary.

June 1, 2006, Sent. Hearing p. 52.

(Resp. Exh. 16, ¶¶ 11–13, 21.)

### III. Analysis
#### A. Ground One

Schweitzer argues that by retroactively applying the *Foster* remedy the state courts unconstitutionally changed the "statutory maximum" sentence that was applicable to him at the time of his offense. In other words, because he had never been to prison, under Ohio law the maximum penalty that could be imposed based solely upon his plea without further factfinding by the court was, in fact, the minimum sentence within the statutory range for each offense. It is argued, therefore, that the required findings were more than sentencing enhancements. Indeed, they were the equivalent of elements of the offense at the time Schweitzer committed them and,

as such, they could not be retroactively eliminated by the *Foster* Court. *See Washington v. Recuenco,* 548 U.S. 212, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006); *see also Sattazahn v. Pennsylvania,* 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). Schweitzer argues, "when a sentencing scheme incorporates a statutory maximum prohibiting the imposition of specified punishments except upon proof of certain facts, the facts which must be demonstrated in order to exceed the statutory maximum are to be treated as elements of a criminal offense." (Petition at 10.) He further argues that since states cannot enhance a penalty for an offense by judicial factfinding as it is equivalent to an element of the offense, it follows that a state cannot retroactively remove that same provision yet make the penalty available without it.

■ The first issue to be addressed is whether the factors in O.R.C. § 2929.14(B) are to be treated as elements. Although the case law cited by Schweitzer does indeed equate sentencing factors and elements in that both require the state to be put to its proof beyond a reasonable doubt, it does not follow that the Sixth Amendment right to a jury trial prohibits the Supreme Court of Ohio from severing a sentencing factor or enhancement when fashioning a remedy where statutory provisions are found constitutionally defective. That, more appropriately, is a determination of due process than the Sixth Amendment. It is difficult to follow Schweitzer's insistence on a separate Sixth Amendment claim—that an element of a criminal offense, or the equivalent, may not be retroactively removed—as such an argument ultimately must be channeled through *ex post facto* or due process considerations. This conclusion is dictated by the law he

cites, including *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798), *Carmell v. Texas,* 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000), and especially *Rogers v. Tennessee,* 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).

The *Rogers* Court held that "the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *[E]x [P]ost [F]acto* clause." *Garrett v. Warden, Ohio Reformatory for Women,* 2009 WL 1416047, Case No. 3:09cv058, *3 (S.D.Ohio May 19, 2009). In *Rogers,* the Tennessee Supreme Court abolished the common-law rule that the death of a victim within a year and a day after being assaulted is a prerequisite to a homicide prosecution. The Court then applied the abolition to uphold the murder conviction under consideration where death occurred fifteen months after the assault. The United States Supreme Court also upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. Furthermore, the *Rogers* Court noted that a judicial extension of the *Ex Post Facto* Clause "would circumvent the . . . [c]lause's clear text, which expressly applies only to legislatures; would evince too little regard for the important institutional and contextual differences between legislating and common law decisionmaking; would be incompatible with the resolution of uncertainty that marks any evolving legal system; and would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system." *Rogers,* 532 U.S. at 452, 121 S.Ct. 1693. *Rogers* clearly involves due process considerations and was not decided under the Sixth Amendment right to a trial by jury.[1]

---

**1.** Moreover, *Rogers* is also distinguishable from the instant case as the abolishment of the year-and-a-day rule more closely resembles an element of a crime than does a sentencing enhancement.

Schweitzer also argues that Ohio's sentencing scheme, as revised by *Foster*, violates the approved remedy in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). In *Cunningham*, the Supreme Court examined California's determinate sentencing law, which set forth a tripartite scheme of sentencing. Under California law, each offense could be punished by an upper term, a middle term, or a lower term of incarceration. The judge was obligated to impose the middle term unless specific judicial factfinding supported the upper or lower term. *Cunningham*, 549 U.S. at 275, 127 S.Ct. at 860.

As the *Cunningham* Court explained, the Sixth Amendment requires that, other than a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Cunningham*, 549 U.S. at 282, 127 S.Ct. at 864 (*quoting Apprendi v. New Jersey*, [citation omitted]). The "statutory maximum" is the sentence a judge may impose without any additional factual findings beyond those found by the jury or admitted by the defendant. *Cunningham*, 549 U.S. at 283, 127 S.Ct. at 865 (*quoting Blakely v. Washington*, 542 U.S. at 303–304, 124 S.Ct. 2531). Thus, under California law, the "statutory maximum" was held to be the middle term, not the upper term. *Cunningham*, 549 U.S. at 288, 127 S.Ct. at 868. The Court ruled that because the California sentencing scheme authorized the judge, not the jury, to find the facts permitting an upper term sentence, the California system violated the Sixth Amendment. *Cunningham*, 549 U.S. at 293, 127 S.Ct. at 871.

Respondent correctly cites *Cunningham* as expressly approving the *Foster* remedy. The Court stated: "We note that several States have modified their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing. They have done so by calling upon the jury—either at trial or in a separate sentencing proceeding—to find any fact necessary to the imposition of an elevated sentence. As earlier noted, California already employs juries in this matter to determine statutory sentencing enhancements. * * * Other states have chosen to permit judges genuinely 'to exercise broad discretion ... within a statutory range,' which 'everyone agrees,' encounters no Sixth Amendment shoal." *Cunningham*, 549 U.S. at 294, 127 S.Ct. at 871. The latter course was chosen by the Ohio Supreme Court in *Foster*.

Moreover, nothing in *Cunningham* prohibits the Ohio Supreme Court from fashioning the *Foster* remedy by severing sentencing considerations and, thereby, authorizing discretionary sentences beyond the statutory minimum without findings under O.R.C. § 2929.14(B). It would have been entirely inappropriate for the Supreme Court in *Cunningham* to fashion a remedy or even recommend a solution for the California statutes. In fact, the *Cunningham* Court stated that it was up to the California legislature to modify its statutes as other states had done.

Schweitzer also argues that the Sixth Circuit in *United States v. Barton*, 455 F.3d 649 (2006) does not foreclose his claim as *Barton* was decided before *Cunningham*. He argues further that in subsequent decisions by the Sixth Circuit such as *United States v. Sexton*, 512 F.3d 326 (6th Cir.2008), the court did not address the applicability of *Cunningham*. *Id.* at 331. However, *Barton* and *Sexton* are distinguishable in this context as both address the due process and *ex post facto* issues such as notice, foreseeability and fair warning, not the issue as to whether sentencing enhancements are considered elements of the crime. Schweitzer argues

that these Sixth Circuit cases are not controlling for two other reasons. First, *Booker* did not overrule *Blakely*, and *Blakely* prohibits the remedy adopted by the Ohio Supreme Court in *Foster*. Second, the *Foster* remedy is dramatically different than that in *Booker*, as *Foster* allows trial judges to impose any sentence they want and not explain their reason.

If the findings under O.R.C. § 2929.14(B), required pre-*Foster*, are indeed factfindings implicating *Blakely*, the Ohio Supreme Court cured the violation by excising that section, thereby no longer requiring such findings before imposing more than the minimum sentence within the statutory range. In compliance, when re-sentencing Schweitzer to fifteen years of incarceration, the court made no findings that would implicate the Sixth Amendment.

The *Foster* remedy of severing the factfinding required by O.R.C. § 2929.14(B) before a court imposes a non-minimum sentence within an applicable statutory range is not an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. The same can be said about the state appellate court's approval of the sentence ultimately imposed upon Schweitzer.

It may well be that prior to *Foster*, the "statutory maximum" for Schweitzer as defined by *Blakely* under the Sixth Amendment, absent a jury finding or admission, was the statutory minimum as set out in Ohio law. However, it does not follow that *Blakely* in any way prohibited the Ohio Supreme Court from severing that portion of the Ohio Revised Code requiring findings in the first place. The statutory maximum for due process under *Rogers* will be discussed in more detail below. Suffice it to say here that Schweitzer's arguments as stated under ground one are without merit.

**B. Ground Two**

In ground two, Schweitzer argues that *Foster* and the state appellate court's decision are an objectively unreasonable application of *Booker*. In Ohio, the statutes containing the presumptive sentencing factors were severed allowing trial judges freedom to impose a sentence without giving any reasons at all. *Foster* at 30, 845 N.E.2d 470. Schweitzer argues that this far exceeds the *Booker* remedy under which federal courts are still required to consult the Guidelines to calculate the range of sentence, consider the statutorily-mandated sentencing factors, and then impose a reasonable sentence. *See generally Booker, supra.*

The *Booker* Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's in that it required judicial findings of fact for upward departures from a base sentence. The *Booker* Court found that such mandatory factfinding violated the holding in *Apprendi v. New Jersey*, 530 U.S. at 466, 120 S.Ct. 2348, and excised those portions of the statute making such judicial factfinding mandatory. The Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as mere guidelines that should be considered in sentencing. *Booker*, 543 U.S. at 249, 125 S.Ct. 738. The Court required federal courts to apply both parts of its holding—striking the mandatory findings on Sixth Amendment grounds and using the previously-mandated factors as guidelines—in future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249, 125 S.Ct. 738. Finally, the *Booker* Court struck those sections of the statute requiring a relatively strict appellate review of departures from the previously mandatory sentencing guidelines

and found that the resulting statute allowed for appellate review under a "reasonableness" standard. *Id.* at 259–60, 125 S.Ct. 738.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated *Blakely,* it explicitly turned to *Booker* when considering potential remedies. *Foster,* 109 Ohio St.3d at 26–27, 845 N.E.2d at 495–96. In the end, the Ohio Supreme Court excised those portions of the statute requiring judicial factfinding before making upward departures from a base sentence. *Id.,* 109 Ohio St.3d at 28–30, 845 N.E.2d at 497–98. It instructed Ohio courts when making sentencing determinations to use as guides O.R.C. §§ 2929.11 and 2929.12 setting out the overall purposes of sentencing and factors relating to the seriousness of the offense and the likelihood of recidivism. *State v. Mathis,* 109 Ohio St.3d 54, 62, 846 N.E.2d 1 (2006).[2] This result, according to the Ohio Supreme Court, best approximated the will of the legislature while doing away with the constitutionally defective provisions. *Id.*

Respondent argues that as *Foster,* in applying the severance remedy of *Booker,* does not criminalize any conduct which had been legal prior to the decision, nor does it increase the statutory maximum sentence when it eliminated the judicial factfinding requirement, *Foster* does not "authorize a sentence in excess of that otherwise allowed for an offense." *Blakely,* 542 U.S. at 304, 124 S.Ct. 2531, *citing McMillan v. Pennsylvania,* 477 U.S. 79, 82, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Schweitzer contends that the remedy adopted by the Supreme Court in *Foster* is distinguishable from that adopted by the United States

Supreme Court in *Booker.* (Doc. No. 1 at 17–19.) He asserts that *Foster* effectively eliminated the ability of an appellate court to review a sentence and thereby violated his right to due process.

■■■ There has never been a federal constitutional right to an appeal. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Martinez v. Court of Appeal,* 528 U.S. 152, 160, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *accord Hollin v. Sowders,* 710 F.2d 264–267 (6th Cir.1983); *Horton v. Bomar,* 335 F.2d 583, 584 (6th Cir.1964). Even more to the point, a defendant does not have the right to appeal the length of his sentence. *See United States v. Nation,* 352 F.3d 1075, 1076–1077 (6th Cir.2003) ("[A Defendant] has no constitutional right to appeal his sentence."); *accord United States v. Burns,* 433 F.3d 442, 445 (5th Cir.2005) ("There is no constitutional right to appeal a criminal sentence.") *(citing Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) *(quoting Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956)).

Ohio, by statute, confers defendants limited appellate rights with respect to their sentences. *See* O.R.C. § 2953.08. As explained in its opinion, the *Foster* Court excised certain statutory provisions that

---

**2.** The Ohio Supreme Court decided *Mathis* on February 27, 2006, the same day as *Foster.* The issue before the *Mathis* Court was whether the state court of appeals may order a limited remand for necessary statutory findings to be placed on the record, or whether it must vacate the sentence and remand for a *de novo* sentencing hearing. The Court applied *Foster* and remanded for resentencing. *Mathis* at 55, 846 N.E.2d 1.

required impermissible judicial factfinding as follows:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.
>
> ... Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.
>
> We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within

the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

> Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*Id.* at 29–30, 845 N.E.2d 470.

*Foster* held O.R.C. § 2953.08, in so far as it refers to the other severed sections, no longer applies, however, it did not sever all appeal rights.[3] It also left in tact the statutory provisions setting forth the purposes of sentencing and the provisions setting out seriousness and recidivism factors—O.R.C. § 2929.11 and 2929.12. The provisions are not dissimilar to those found in the federal sentencing guidelines. They guide judges in the "overriding purposes of felony sentencing, which are 'to protect the public from future crime by the offender and others and to punish the offender,'" and yet give trial courts discretion "to

---

**3.** In *State v. Mathis,* 109 Ohio St.3d 54, 59, 846 N.E.2d 1 (2006), the Ohio Supreme Court stated:

> Unaffected by *Foster* were the state's appeals as a matter of right for a sentence where no prison term was imposed despite the presumption favoring prison for certain

offenses, or for judicial modification of a sentence for a first- or second-degree felony under R.C. 2929.20. [R.C. 2953.08(B)(1) and (3)]. Nor was the defendant's or the state's appeal as of right affected when the sentence "is contrary to law." [R.C. 2953.08(A)(4) and (B)(2)].

determine the most effective way to comply with the purposes and principles of sentencing." *Id.* (*quoting Foster* at 12–13, 845 N.E.2d 470, O.R.C. §§ 2929.11(A), O.R.C. § 2929.12(A)); *see also State v. Kalish*, 120 Ohio St.3d 23, 26, 896 N.E.2d 124, 128–29 (2008). For example, trial courts generally discuss the seriousness of the offense and the likelihood of recidivism at the sentencing hearing. *See Almendarez–Torres v. United States*, 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ("recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence").[4]

Though Ohio courts never disputed criminal defendants had a right to appeal their sentence after *Foster*, it was unclear what standard of review should apply to such appeals. Prior to *Foster*, it was undisputed that an appellate court was to "review the records, including the findings underlying the sentence or modification" and had the power to "take any action ... if it clearly and convincingly finds" either that the record fails to support the sentencing court's findings or the sentence is otherwise contrary to law. *Kalish*, 896 N.E.2d at 127 (*citing* O.R.C. § 2953.08(G)(2)). In fact, the former statute expressly stated that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." O.R.C. § 2953.08(G)(2).

After *Foster* excised the requirement for the sentencing court to make judicial factfindings, it was undecided if sentences were to continue to be reviewed under a clear and convincing standard or under the old abuse-of-discretion standard. In *Kalish*, the Ohio Supreme Court chose the

latter standard and held that appellate courts must apply a two-step approach in reviewing felony sentences. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." 896 N.E.2d at 126. The *Kalish* Court explained that O.R.C. §§ 2929.11 and 2929.12 are not factfinding statutes, but instead set out guides for a trial court to use in fashioning an appropriate sentence. *Id.* at 128. Therefore, sentences, including those made consecutive, are subject to appellate review for abuse-of-discretion. *Id.*

While *Kalish* dictated the standard in Ohio courts for reviewing felony sentences, the Court's sole concern in the instant matter is whether this violates clearly established federal law as set out in United States Supreme Court precedent. Schweitzer argues that the severance remedy crafted in *Foster* is not analogous to the remedy crafted in *Booker*. The Court concedes that the remedies are not identical. The *Booker* Court left in place sentencing guidelines, but found that the application of the guidelines was not mandatory. *Foster*, on the other hand, eliminated findings previously applicable to consecutive and some greater than the minimum terms, while maintaining a relatively narrow range of sentences for the five levels or degrees of felonies. Schweitzer avers that *Booker* maintained a reasonableness standard of review concerning the appropriateness of a given sentence while *Foster* did not. Ohio, as stated

---

**4.** A judge can consider such factors as "whether the physical or mental injury was worsened 'because of the physical or mental condition or age of the victim;' whether the offense caused serious physical, psychologi-

cal, or economic harm to the victim; whether the defendant held a public office or position of trust in the community, and the offense related to that office or position." *Foster*, 845 N.E.2d at 485.

above, currently allows review on an abuse-of-discretion standard. The *Booker* decision, however, did not set a threshold or minimum standard determinative of whether a state's appellate process comports with due process and equal protection. Schweitzer has not identified any clearly established federal law that renders abuse-of-discretion sentencing appeal procedures, such as those adopted in Ohio, unconstitutional.[5] As such, any differences between the two standards of appellate review are not of a constitutional magnitude.

The *Foster* Court reasonably applied the *Booker* severance remedy to only limited portions of Ohio's sentencing law. The *Foster* remedy of excising the factfinding required by O.R.C. § 2929.14(B) prior to a court imposing a non-minimum sentence within an applicable statutory range, is not an objectively unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. The same can be said about the state appellate court's approval of the sentence ultimately imposed upon Schweitzer. Ground two is without merit.

## C. Ground Three

■ In ground three, Schweitzer contends that the state appellate court applied *Rogers v. Tennessee*, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) in an objectively unreasonable manner. Schweitzer argues that the state appellate court's conclusion that *Apprendi* gave him notice of a potential change in the sentencing laws which alleviated any potential due process considerations was objectively unreasonable.

The state appellate court held that because the offense occurred subsequent to *Apprendi*, Schweitzer had notice that a

change in the sentencing law in Ohio was likely to occur and, therefore, the remedy in *Foster* did not violate due process. (Resp. Exh. 16, ¶ 13.)

The United States Constitution specifically prohibits states from passing *ex post facto* laws. U.S. Const., Art. I, § 10, cl. 1. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process ... would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee*, 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)

■ Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notions of due process." *Id.* at 456, 121 S.Ct. 1693. In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Such a *post hoc* criminalization of previously innocent acts fails to give defendants fair warning of the punitive consequences of their behavior. The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the Due Process Clause. *Id.* at 458–461, 121 S.Ct. 1693. These judicial limitations are most concisely reflected in the basic principle of

---

**5.** Though the *Kalish* decision was not rendered until after Schweitzer's final sentencing appeal, it is immaterial as Schweitzer has failed to identify any clearly established federal law that invalidates either of the appellate review approaches considered by Ohio courts.

fair warning. The *Rogers* Court rested its rationale on "core concepts of notice, foreseeability, and in, particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459, 121 S.Ct. 1693.

While neither the Sixth Circuit nor the United States Supreme Court has addressed the issue of whether the *Foster* decision is tantamount to an *ex post facto* law, the Sixth Circuit has repeatedly held that the retroactive application of the similar remedial ruling in *Booker* does not raise an issue. *See United States v. Hill,* 209 Fed.Appx. 467, 468 (6th Cir.2006); *United States v. Barton,* 455 F.3d 649, 657 (6th Cir.2006); *United States v. Shepherd,* 453 F.3d 702, 705–06 (6th Cir.2006); *See also U.S. v. Sexton,* 512 F.3d 326, 331 (6th Cir.2008).

In *Barton,* 455 F.3d 649, the Court began by construing *Bouie* in light of the Supreme Court's holding in *Rogers v. Tennessee.* From these two Supreme Court decisions, the Court held that "when addressing *ex post facto*-due process concerns, questions of notice, foreseeability, and fair warning are paramount." *Barton,* 455 F.3d at 655, *citing Rogers,* 532 U.S. at 459, 121 S.Ct. 1693. The Sixth Circuit then concluded that because *Blakely* had been decided prior to the defendant's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner and, so, due process was not violated. *Id.* at 653–54.

The Ohio Supreme Court also recently addressed the *ex post facto* and due process issues when a defendant is resentenced under *Foster* for an earlier offense. The Court found there was no violation of a Sixth Amendment right to a jury trial. It also held that neither the *Ex Post Facto* nor Due Process Clauses were violated. *State v. Elmore,* 122 Ohio St.3d 472, 912 N.E.2d 582 (Ohio 2009). The *Elmore* Court concluded that the defendant had notice of the sentencing range, which was the same at the time he committed the crimes as when he was resentenced. *Id.* at 588.

While the Ohio Supreme Court's interpretation of federal law is not binding on this Court, the *Elmore* decision is persuasive. Moreover, Ohio federal district courts have also rejected *ex post facto* challenges to the retroactive application of judicial reconstruction of a statute. *See, e.g., Keith v. Voorhies,* 1:06CV2360, 2009 WL 185765, at *11, 2009 U.S. Dist. LEXIS 4726, at *34 (N.D.Ohio Jan. 23, 2009) (Lioi, J.); *Watkins v. Williams,* 2008 WL 2484188, 2008 U.S. Dist. LEXIS 47557 (N.D.Ohio Jun. 17, 2008) (Adams, J.); *Lyles v. Jeffreys,* 2008 WL 1886077, 2008 U.S. Dist. LEXIS 33822 (N.D.Ohio Apr. 24, 2008) (Oliver, J.); *Smith v. Moore,* 2008 WL 3890009, Case No. 3:07CV1121 (N.D.Ohio Aug. 19, 2008) (Adams, J.); *Hooks v. Sheets,* 2008 WL 4533693, 2008 U.S. Dist. LEXIS 77612 (S.D.Ohio Oct. 3, 2008) (Beckwith, J.). As noted in *Rettig v. Jefferys,* 2007 U.S. Dist. LEXIS 97648, 24–25 (N.D.Ohio Dec. 17, 2007):

> Ohio courts have uniformly rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., State v. Swann,* 171 Ohio App.3d 304, 314, 2007 Ohio 2010, 870 N.E.2d 754, 762 (Ohio Ct.App.2007); *State v. Sharp,* 2007–Ohio–6324, 2007 WL 4200755, at *2 (Ohio Ct.App.2007); *State v. McGhee,* 2006–Ohio–5162, 2006 WL 2796275, at *7 (Ohio Ct.App.2006). *See generally United States v. Barton,* 455 F.3d 649, 657 (6th Cir.), *cert. denied,* 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006) (*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), does not violate *ex post facto*). The court in *McGhee* found no *ex post facto* violation because the defendant "knew the potential statutory

sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because [he] was unlikely to amend his criminal behavior in light of a sentencing change." *McGhee*, 2006–Ohio–5162, 2006 WL 2796275, at *7. In *Sharp*, the court noted that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and *Foster* "did not judicially increase the range of his sentence." *Sharp*, 2007–Ohio–6324, 2007 WL 4200755, at *2.

The *Lyles* Court noted that, although Ohio's sentencing statutes may have been unconstitutional at the time the defendant was sentenced, Ohio law "gave [petitioner] fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts." 2008 WL 1886077 at *2, 2008 U.S. Dist. LEXIS 33822 at *4. Schweitzer cannot reasonably argue that he lacked notice of the possible penalties that the court could impose.

Although Ohio's sentencing statutes at the time of Schweitzer's criminal acts may have been, in part, unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed such acts. The *Foster* remedy did not increase the maximum penalty to which Schweitzer was potentially facing. He was given fair warning of what was prohibited and of the potential penalties which he would be subject to if he committed the acts. *See United States v. Alston–Graves*, 435 F.3d 331, 343 (D.C.Cir.2006); *United States v. Vaughn*, 430 F.3d 518, 524–25 (2d Cir.2005); *United States v. Lata*, 415 F.3d 107, 112 (1st Cir.2005).

Moreover, the state appellate court accurately concluded that as Schweitzer's offenses occurred subsequent to *Apprendi*, he had notice that a major change in sentencing was likely to occur. The state appellate decision relied on *State v. McGhee*, 2006 WL 2796275, *5, Case No. 17–06–05 (3rd App. Dist. Ohio, Oct. 2, 2006) to conclude that Schweitzer's due process rights were not violated. The appellate court incorporated the reasoning of *McGhee* by reference. As Respondent points out, the *McGhee* court clearly engaged in a federal constitutional analysis to conclude *Foster* did not violate the *Ex Post Facto* Clause. *See e.g. United States v. Barton*, 455 F.3d 649 (6th Cir.2006) (after analyzing *Apprendi*, *Blakely* and *Booker*, remedy announced in *Booker* was not unexpected as offense was committed after *Blakely*.) The state appellate court did not unreasonably apply United States Supreme Court precedent.

### D. Ground Four

In ground four, Schweitzer contends that the state appellate decision was objectively unreasonable in refusing to extend the *Ex Post Facto* Clause in a situation where it is controlling. He argues that the judicial act in *Foster* severing portions of the state sentencing scheme went well beyond reinterpretation and was tantamount to a legislative act. He argues the severance remedy is identical to what would happen if the legislature enacted an amendment and, therefore, the *Ex Post Facto* Clause should control.

As discussed previously, in *Rogers v. Tennessee*, 532 U.S. 451, 457, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), the Supreme Court held that the Due Process Clause does not incorporate or extend all the restrictions imposed upon state legislatures by the *Ex Post Facto* Clause into the province of state judicial decisions. *See Garrett v. Warden*, 2009 WL 1416047, 2009 U.S. Dist. LEXIS 42826 (S.D.Ohio May 19, 2009). As *Foster* did not increase Schweit-

zer's sentence, the state appellate court decision declining to extend the *Ex Post Facto* Clause to the facts of the case was objectively reasonable. Federal habeas corpus relief may be granted if, under clearly established federal law, a state court has been unreasonable in applying the governing legal principle to the facts of the case. A state determination may be set aside under this standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled. Here, the state appellate court's ruling was neither contrary to *Rogers* nor an unreasonable application of its rationale.

The new judicial interpretation of the law brought about by *Booker* and *Foster* affects Schweitzer's punishment, not whether his conduct was innocent. Aggravated robbery, felonious assault and possession of criminal tools were not made a crime by *Foster*. Schweitzer also had fair warning that these crimes were punishable by a prison term of up to nineteen years, as spelled out in the Ohio Revised Code. He had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of the core concepts discussed in *Rogers*. This Court cannot find that Ohio's decision concerning Schweitzer's resentencing was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

## IV. Conclusion

For the foregoing reasons, the Court recommends that Schweitzer's Petition be denied.

Date: September 9, 2009.